# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MONTE HANDLEY,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }   Case No.: 2:06-CV-04645-RDP |
| | } |
| **SOUTHERN CARE, INC., et al.,** | } |
| | } |
| Defendants. | } |

## MEMORANDUM OPINION

**I.    Background**

This case is before the court on Defendants DiPiazza, LaRocca, McDowell & Company, P.C., DLMC Healthcare, LLC, and A.V. LaRocca's (hereinafter "Defendants") Motion to Dismiss (Doc. #45), filed January 22, 2009.[1]  Plaintiff commenced this case by filing his Complaint (Doc. #1) on November 13, 2006 against Defendants and Southern Care, Inc., King & Associates, Inc., William King, and Marie King (hereinafter "King Defendants") alleging violations of the False Claims Act, 31 U.S.C. § 3729, *et seq*., specifically:  Count I – Presentation of False Claims; Count II – Making or Using a False Record or Statement; Count III – Conspiring to Defraud the United States; and Count IV – Retaliation Against Employee, Relator.

The United States requested several extensions of time to consider election to intervene, the first motion filed on January 5, 2007.  (Doc. #6).  On April 30, 2008, the Government intervened against the King Defendants solely.  (Doc. #21).

---

[1] Plaintiffs filed their Response (Doc. #48) on February 2, 2009.  Defendants filed their Reply (Doc. #49) on February 4, 2009, bringing this Motion under submission.

The King Defendants filed a Motion for Summary Judgment on April 3, 2009. (Doc. #52). On July 27, 2009, the parties indicated that the Government and the King Defendants reached a settlement agreement. The court entered an Order (Doc. #59) dismissing the King Defendants and finding their motion for summary judgment moot. That dismissal did not affect Defendants DiPiazza, LaRocca, McDowell & Company, P.C., DLMC Healthcare, LLC, and A.V. LaRocca nor the instant motion. As explained more fully below, the motion is due to be granted with respect to Counts I, II, and III of Plaintiff's Complaint and denied with respect to Count IV.

## II.     Standard of Review

Defendants have challenged the sufficiency of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) and 9(b). Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). That is, if a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*. The *Twombly* rule is not limited to the antitrust context. As the Supreme Court recently held, "[t]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, 127 S.Ct. at 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*.

The Supreme Court recently revisited the *Twombly* standard in *Iqbal*, clarifying the proper approach when evaluating a motion to dismiss under Rule 12(b)(6). The Court identified two working principles underlying *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 127 S.Ct. at 1955]. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S.Ct. at 1949-50 (some citations omitted).

As reaffirmed in *Iqbal*, in deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (*citing GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)); *see also Iqbal*, 129 S.Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal citation omitted). The first principle underlying the *Twombly* decision, according to the Court in *Iqbal*, is "unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (*citing*

*Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)).  Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original).  Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.  *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Communications Corp.*, 274 F.Supp.2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

When alleging violations of the False Claims Act, a plaintiff must also comply with Rule 9(b)'s stricter pleading standard.  "[A] plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.  [*Cooper*,] 19 F.3d at 567-68; *see also Stinson*, 755 F.Supp. at 1052 (noting that when Rule 9(b) applies, "pleadings generally cannot be based on information and belief")."[2]  *Clausen v. Laboratory Corporation of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

---

[2] *United States ex rel. Cooper v. Blue Cross & Blue Shield of Florida*, 19 F.3d 562, 567-68 (11th Cir. 1994); *United States ex rel. Stinson v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1040, 1052 (S.D. Georgia 1990).

**III.    Discussion**

    **A.    Fraudulent Presentment**

Defendants first argue that Counts I, II, and III, should be dismissed for failure to plead with requisite particularity as required by Rule 9(b).[3]  The Eleventh Circuit examined this question in *Clausen*.

> The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe. . . . Without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act . . . The Submission of a claim is thus not . . . a "ministerial act," but the *sine qua non* of a False Claims Act violation.
>
> As such, Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.  As in *Cooper*, and as with every other facet of a necessary False Claims Act allegation, if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government.

*Clausen*, 290 F.3d at 311 (internal citations omitted, emphasis supplied).  In order for a plaintiff to satisfy the demands of Rule 9(b), he must allege that some specific fraudulent submission was presented to the government.  Plaintiff, in his Complaint, identifies only one claim that was presented to the government.  Though the information originally provided in that claim was allegedly

---

[3] "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  FED. R. CIV. P. 9(b).  "Rule 9(b) [applies] to actions under the False Claims Act." *Clausen*, 290 F.3d at 1309.

fraudulent (according to the Complaint), Plaintiff, in accordance with his duties, corrected the claim, rectifying the defect, and thus, caused a non-fraudulent claim to be presented to the Government.

Plaintiff cites an unpublished Eleventh Circuit case, *Hill v. Morehouse Medical Association, Inc.*, 2003 WL 22019936 (11th Cir. 2003), for the proposition that an insider, such as Plaintiff, does not need to identify a specific instance of a fraudulent claim being presented, but rather need only identify the fraudulent billing practices leading up to the submission of a fraudulent claim.

> Unlike the plaintiff in [*Clausen*], however, Hill worked in the very department where she alleged the fraudulent billing schemes occurred – MMA's billing and coding department. Thus, she has firsthand information about MMA's internal billing practices and the manner in which the fraudulent billing schemes were implemented. Moreover, she alleged that she observed MMA billers, coders, and physicians alter various CPT and diagnosis codes over the course of seven months and thus submit false claims for Medicare reimbursement to the government. Throughout her complaint, she identified the confidential documents within MMA's exclusive possession that contain additional evidence of the fraud.[4] In addition, she supported her legal theory with facts describing MMA's billing process, the specific CPT and diagnosis codes that were altered for each of the five billing schemes, and the frequency of submission of each type of claim. Furthermore, in some instances, Hill provided the names of the employees and physicians who were responsible for making the fraudulent changes and the clinics where the codes were altered. Most important, however, unlike the plaintiff in [*Clausen*], Hill was privy to MMA's files, computer systems,

---

[4] "Hill asserted that she was unable to provide patient names or the exact dates that claims were submitted to the government, because documents containing such information are within MMA's exclusive possession. Failure to allege patient names and the exact dates that claims were submitted to the government, however, is not fatal to a claim under the FCA. Our precedent requires only that "a plaintiff . . . plead . . . the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." [*Clausen*], 290 F.3d at 1310 (internal quotation marks omitted). Under the facts of this case, the question of "who engaged in" the fraudulent acts is answered by the names of the MMA employees and physicians who altered the CPT and diagnosis codes, not the patient names. *Id*. (internal quotation marks omitted). Additionally, to require Hill to provide the exact dates that claims were submitted to the government would require that she violate patient confidentiality by copying private records. As we are not prepared to encourage violations of patient confidentiality, we find that Hill need not provide the exact dates that claims were submitted to the government to satisfy Rule 9(b)." *Hill*, 2003 WL 22019936 at n. 8.

>   and internal billing practices that are vital to her legal theory, because she worked in MMA's billing and coding department for seven months. *See id.* at 1314 (acknowledging that "an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the" FCA).
>
>   Thus, based upon Hill's legal theory and the specific factual allegations in her complaint, she "alert[ed the] defendants to the precise misconduct with which they are charged," and there is no evidence that her allegations are spurious. [*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)] (internal quotation marks omitted). Moreover, as Hill was an employee within the billing and coding department and witnessed firsthand the alleged fraudulent submissions, her factual allegations provide the indicia of reliability that is necessary in a complaint alleging a fraudulent billing scheme. *See* [*Clausen*], 290 F.3d at 1311.

*Id*. at *4.

However, unlike the plaintiff in *Hill*, Plaintiff has not alleged that Defendants presented *any* false claims to the government. The plaintiff in *Hill* "witnessed firsthand the alleged fraudulent submissions," though she could not provide patient names, dates and amounts. Here, Plaintiff has not alleged that he witnessed any fraudulent submissions. In fact, Plaintiff refers to only one claim that was presented to the Government during Plaintiff's employment, and it was the claim that he personally corrected and submitted.

>   Medicare-certified institutional providers are required to submit an annual cost report to a fiscal intermediary (or "FI"). . . . The Medicare cost report is due within 150 days of the end of each fiscal year. . . .
>
>   In December 2005, just a few months after Realtor Handley started with DLMC and DLMC Healthcare, he was preparing a cost report for a long time client, Oakwoods Home for the elderly. Both Handley and White concluded that King & Associates utilization review fees could not be claimed as pass through costs subject to direct reimbursement outside the PPS system and predetermined RUG rate.

> The Oakwoods cost report was due December 31, 2005.  Both Handley and White attempted to address this problem with A.V. LaRocca but he refused to hear their reasoning.
>
> Thereafter, Handley and White *correctly* prepared the Oakwoods cost report and properly listed utilization review costs as A & G costs, not subject to pass through reimbursement.

(Complaint, Doc. #1 at ¶¶ 46, 101-103).  This is the only allegation of a claim *submission* which is made in Plaintiff's Complaint, and, according to Plaintiff's own allegations, this claim was not fraudulent at the time it was submitted.  Indeed, Plaintiff only refers to one other claim in his Complaint, a claim he was working on when he was terminated.  He asserts that he was terminated because he objected to preparing that claim as directed (*i.e.*, fraudulently).  However, he alleges he was terminated before the claim was completed and submitted to the Government.

Plaintiff has alleged that a scheme to prepare fraudulent claims was present, but he has not alleged that any fraudulent claims were submitted.  Unlike *Hill*, Plaintiff does not allege that he witnessed any fraudulent *presentments* of claims.  Thus, Plaintiff fails to meet Rule 9(b)'s pleading standard with respect to his first three counts because he has not sufficiently alleged that Defendants presented a fraudulent claim to the Government.

When a plaintiff's complaint does not meet the requirements of Rule 9(b), he is entitled to an opportunity to amend the complaint to bring it into compliance with the rule.  *Cooper*, 19 F.3d at 568-69; *see also Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) ("If our precedent leaves any doubt regarding the rule to be applied in this circuit, we now dispel that doubt by restating the rule.  Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

Therefore, Counts I, II, and III are due to be dismissed without prejudice, and the court grants Plaintiff leave to file an amended complaint that attempts to satisfy Rule 9(b).

### B.     Retaliatory Discharge

Count IV of Plaintiff's Complaint is for wrongful discharge in violation of 31 U.S.C. § 3730(h).[5]  As this claim is for retaliatory discharge – not fraud – the more lenient pleading standard of Rule 8(a)(2) applies rather than Rule 9(b).[6]  Plaintiff is not required to set out in detail the facts upon which he bases his claim.  Rather, the Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Likewise, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

Defendant argues that the unpublished Eleventh Circuit opinion in *Mack v. Augusta-Richmond County*, 148 Fed.Appx. 894 (11th Cir. 2005), stands for the proposition that Plaintiff's retaliation claim should be dismissed because there is no proof that Defendants were on notice of Plaintiff's protected conduct in violation of a False Claims Act action.  This argument is off the mark.

---

[5] This code subsection was amended in 2009.  At some point during the litigation of this case, the court will have to decide whether the prior version of the statute or the amended version applies.  However, the court concludes that Plaintiff has met the pleading requirement under Rule 8(a)(2) regardless of which version of the statute applies.  Therefore, the court expressly does not decide which version of the statute applies at this point, but rather expressly reserves any decision on this issue.

[6] *See U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 449 (6th Cir. 2008); *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1103 (9th cir. 2008); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 238 (1st Cir. 2004).

The *Mack* decision involved an appeal from a grant of summary judgment, not a Rule 12(b)(6) dismissal. The court in *Mack* said "[p]rotection under this provision requires a showing that [the employee] was engaged in protected conduct and that [the employer] retaliated against him because of the protected conduct." *Id*. at 896-97. However, before discovery has taken place, the Plaintiff is not in a position to point to conclusive evidence supporting his claim. Rather, the court must accept all well pleaded factual allegations as true and decide whether Plaintiff's claims have been nudged across the line from conceivable to plausible. *See Twombly*, 127 S.Ct. 1955, 1974. Here, contrary to Defendants' contentions, Plaintiff alleges that he repeatedly objected to the fraudulent conduct of the King Defendants and sought to make Defendants aware of their own potential liability. Applying the relevant standard of review here, the court concludes Plaintiff's allegations with respect to Count IV are sufficient to put Defendants on notice of the alleged protected activity.[7] Therefore, Defendants' motion to dismiss is due to be denied with respect to Plaintiff's retaliation claims. The arguments Defendants have made based upon *Mack* will be more appropriately raised at summary judgment after the parties have had an opportunity for discovery and built a Rule 56 evidentiary record.

**IV.     Conclusion**

For the reasons outlined above, Defendants Motion to Dismiss is due to be granted in part and denied in part. The Motion is denied with respect to Plaintiff's retaliation claims – Count IV. The Motion is granted with respect to Plaintiffs other claims – Counts I, II, and III – which are dismissed without prejudice. However, Plaintiff has leave until August 24, 2009 to amend his

---

[7] Indeed, Plaintiff alleges that DiPiazza called Plaintiff "a whistleblower" while terminating him. (Doc. #1 at ¶ 115).

complaint to attempt to meet the pleading requirements of Rule 9(b). The court will enter a separate order consistent with this memorandum opinion.

    **DONE** and **ORDERED** this   31st   day of July, 2009.

                                                  **R. DAVID PROCTOR**
                                                  UNITED STATES DISTRICT JUDGE